# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **ALOTECH, LTD.,** ) | Case No. 1:13-CV-01971-DAP |
| ) | |
| Plaintiff, ) | Judge Dan Aaron Polster |
| ) | |
| vs. ) | **MEMORANDUM OF OPINION** |
| ) | **AND ORDER** |
| **THE HUNTINGTON NATIONAL BANK.,** ) | |
| **et al.,** ) | |
| ) | |
| Defendants. ) | |

Before the Court is Defendant The Huntington National Bank's Motion to Dismiss (Doc. # 12 "Motion"), an Opposition Brief opposing the Motion (Doc. # 13), and a Reply Brief in support of the Motion (Doc. # 15). For the reasons stated herein, Defendant's Motion to Dismiss is **DENIED** in part and **GRANTED** in part.

**I.**

Plaintiff Alotech, Ltd. ("Alotech"), is a banking customer of Defendant The Huntington National Bank ("Huntington"). In January of 2009, Alotech hired John Black ("Black") to serve as Chief Financial Officer, a position he held until his employment was terminated on August 31, 2012. In September of 2010, Alotech's President and Chief Executive Officer, John Grassi ("Grassi"), and Black opened a business checking account (the "Business Account") at Huntington. Both Grassi and Black were authorized signatories on the account.

On or about August 29, 2012, Grassi received a phone call from a representative of Huntington informing him that the U.S. Department of Homeland Security had notified

Huntington that there had been suspicious activity with respect to the Business Account.  Upon further investigation by Huntington, the FBI and other law enforcement agencies, Grassi and Alotech learned that Black, over the course of approximately eighteen months, withdrew more than $1 million from the Business Account, and converted those funds to his personal use.  Black used those funds to pay for food, gas, hotels, personal credit cards, car rental, home improvements, and gifts for women he met online.  Black arranged with Huntington for the issuance of multiple debit cards linked to the Business Account, some of which were distributed to, and used directly by, women whom Black had met online, for purchases having nothing to do with the business of Alotech.

To perpetuate his scheme, on or about January 5, 2012, Black opened a second business account at Huntington, having forged Grassi's signature on the Business Signature Card for that account  (the "Fraudulent Account").  Black removed all of Grassi's contact information from both the Business Account and the Fraudulent Account so that any account alerts or other bank notices would be sent exclusively to Black.  Black then used the Fraudulent Account to transfer monies to and from the Business Account, which funds were used for Black's personal use.

Alotech asserts that Huntington failed to investigate, or otherwise notify Grassi or anyone else at Alotech, after a bank officer learned from Black himself that he had filed a false police report and a false fraud report with Huntington to hide the fact that he had provided one or more debit cards linked to the Business Account to individuals not associated with Alotech.  Alotech also asserts that the bank allowed obvious non-business purchases to be made with funds from the Business Account, and that all this occurred at or near the same time that Black opened the Fraudulent Account.  According to Alotech, Huntington ignored multiple internal security alerts

triggered by unusual activity in the Business Account; it failed to follow internal procedures that would have resulted in unusual activity in either the Business Account and/or the Fraudulent Account being flagged for review and investigation; and that even after Black's fraud was discovered, Huntington failed to trace and reverse Black's fraudulent wire transfers from the Business Account despite express assurances from Huntington that it would do so.

On September 6, 2013, Alotech filed a complaint alleging common-law negligence and breach of fiduciary duty claims against Huntington, and a claim for negligence under Ohio's version of the Uniform Commercial Code ("UCC" or "the Code"). Alotech asserts that, despite its best efforts, it has to date recovered less than 15 percent of the funds and other property embezzled by Black. As a result, Alotech seeks an award of compensatory damages in an amount not less than $1 million along with punitive damages.

By Motion, Huntington now contends that Alotech cannot recover on any of its claims because the parties' relationship is governed by contract. In support, Huntington has attached to its motion a mass of documents which, Huntington maintains, constitutes the complete terms and conditions of the parties' relationship and forecloses Alotech's common-law and UCC claims. This position is based entirely on the fact that CEO Grassi signed a signature card for the Business Account containing boilerplate which acknowledged that he received all these documents and agreed to be bound by their terms, "as amended from time to time." Huntington also argues that the economic loss rule precludes Alotech's common-law negligence claim, and that there was no fiduciary relationship between the parties.

Alotech counters that the Court cannot determine the terms and conditions of the parties' contractual relationship at this time because, although CEO Grassi signed the card for the

Business Account, he never received many of the documents referenced therein, and a handwritten note by Grassi on one of the documents contradicts Huntington's version of the parties' relationship – giving rise to a factual dispute. It is Alotech's position that, without discovery, the Court cannot dismiss its common-law claims at this time. Alotech further argues that the UCC expressly prohibits Huntington from attempting to contract away its statutory obligation to exercise good faith and ordinary care in its relationship with its depositors, including Alotech.

## II.

When deciding a motion to dismiss under Federal Civil Rule 12(b)(6), the Court's function is to test the Complaint's legal sufficiency. *See Mayer v. Mulod*, 988 F.2d 635, 638 (6th Cir. 1993). The Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and recently in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009), clarified the law regarding what Plaintiff must plead in order to survive a Rule 12(b)(6) Motion.

When determining whether Plaintiff has stated a claim upon which relief can be granted, the Court must construe the Complaint in the light most favorable to the Plaintiff, accepting all factual allegations as true, and determine whether the Complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555. Plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. Although a Complaint need not contain detailed factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are

true." *Id*. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

The Court in *Iqbal*, 556 U.S. at 677-678, further explains the "plausibility" requirement, stating, "a claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Furthermore, "the plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id*. This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### III.

For the reasons to follow, the Court finds, as a matter of law, that Ohio's Uniform Commercial Code displaces Alotech's common-law negligence and breach of fiduciary duty claims.

The Ohio Supreme Court has long held that the codification of law typically displaces and precludes the common-law that precedes it.

> Where the General Assembly has codified the law on a subject, such statutory provisions are to govern to the exclusion of the prior non-statutory law unless there is a clear legislative intention expressed or necessarily implied that the statutory provisions are merely cumulative.

*Metz v. Unizan Bank*, 416 F.Supp.2d 568, 581 (N.D. Ohio 2006) (quoting *Bolles v. Toledo Trust Co.*, 144 Ohio St. 195, 58 N.E.2d 381 (1944) (syllabus ¶ 13). *See also Peters Family Farm, Inc. v. The Savings Bank*, No. 10CA2, 2011 WL 497476, at *2-3 (Ohio App.8 Dist. Jan. 28, 2011).

As it pertains to this case, the drafters of Ohio's Code set out to simplify, clarify and modernize the law governing commercial transactions, to permit continued expansion of

5

commercial practices through custom, usage and agreement of the parties, and to make uniform the law of various jurisdictions. O.R.C. §§ 1301.103(A)(1-3).

The UCC does not purport to codify the entire body of law affecting the rights and obligations of parties to commercial transactions.

> Unless displaced by the particular provisions of Chapters 1301., 1302., 1303., 1304., 1305., 1307., 1308., 1309., and 1310. of the revised Code, the principals of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement their provisions.

O.R.C. § 1301.103(B). Yet, the Code demands that certain chapters, including the chapter that governs the relationship between depositary banks and their customers (O.R.C. §§ 1304 *et seq.*), be "construed liberally and applied to promote" the aforementioned purposes underlying the UCC. See O.R.C. § 1301.103(A). These purposes "cannot be served if parties can avoid the requirements of the UCC by pleading common law causes of action along with their UCC claims for the same alleged transgressions." *Metz*, 416 F.Supp.2d at 582 (citing, among other cases, *Amzee Corp. v. Comerica Bank–Midwest*, No. 01AP-465, 2002 WL 1012998, at *9-10 (Ohio App. 10 Dist. May 21, 2002) (dismissing a corporation's common-law claims for conversion, negligence and unjust enrichment against a bank, arising from forged checks the bank honored that were used by the corporation's employee to pay her personal charge account at the bank)).

Chapter 1304 (otherwise known as UCC Article 4) governs the relationship between banks and their depositors. It provides that many of the Chapter's provisions "may be varied by agreement." O.R.C. § 1304.03(A). However, the one thing the parties <u>cannot disclaim by agreement</u> is the "bank's responsibility for its lack of good faith or failure to exercise ordinary

6

care or limit the measure of damages for the lack or failure." Id.  Thus, regardless of the terms and conditions of the parties' contractual relationship (over which there appears to be a factual dispute), Huntington cannot remove by contract its statutory duty to act in good faith and to exercise ordinary care toward its depositors.  And the economic loss rule that precludes certain common-law negligence claims has no relevance to the statutory negligence claim, which sets forth in detail the damages a depositor may recover for its breach.  See O.R.C. § 1304.03(E).[1]

At the same time, it is clear that Huntington's statutory duty of ordinary care displaces the common-law duty of ordinary care which is the cornerstone of Alotech's common-law negligence claim.  Accordingly, the common-law negligence claim is dismissed with prejudice.

The Court also dismisses the common-law breach of fiduciary duty claim.  The parties agree that the relationship between a bank and its depositors does not generally create a fiduciary relationship.  *See, e.g., Umbaugh Pole Bldg. Co., Inc. v. Scott*, 58 Ohio St.2d 282 (1979).  Furthermore, a claim for breach of fiduciary duty is essentially a claim of negligence that involves a higher standard of care.  *See, e.g., Jean v. Works*, No. 1:04CV1904, 2006 WL 1966644, at *3 (N.D. Ohio Jul. 5, 2006).  As previously discussed, the purposes underlying the UCC, which are to be construed liberally, cannot be served if parties can plead common-law claims along with UCC claims covering the very same conduct.  *Metz*, 416 F.Supp.2d at 582; *Amzee Corp.*, 2002 WL 1012998, at *9-10.  Because the common-law fiduciary duty claim arises

---

[1]O.R.C. § 1304.03 provides:

> The measure of damages for failure to exercise ordinary care in handling an item is the amount of the item reduced by an amount that could not have been realized by the exercise of ordinary care.  If there also is bad faith, the measure of damages includes any other damages the party has suffered as a proximate consequence.

from the same conduct as the negligence claim, the Court concludes that it is displaced by the UCC and dismissed with prejudice.

The Court cannot dismiss the UCC negligence claim because certain complaint allegations, if proven to be true, may show that Huntington breached its statutory duty of good faith and ordinary care to Alotech – for instance, the allegation that the bank failed to investigate or otherwise notify Grassi (or anyone at Alotech other than Black) after Black admitted that he filed a false police report and false fraud report to hide the fact that he had provided one or more debit cards linked to the Business Account to individuals not associated with Alotech; that Huntington either ignored multiple internal security alerts that showing unusual activity in the accounts or that it failed to follow its own procedures for flagging unusual activity in either account for review and investigation; and that Huntington failed to trace and reverse fraudulent wire transfers from the Business Account despite express assurances that it would do so.[2] Accordingly, the UCC claim survives the pending motion to dismiss.

## IV.

Based on the foregoing, the Court **GRANTS** Huntington National Bank's Motion to Dismiss the common-law negligence and breach of fiduciary duty claims, and **DENIES** the Motion to Dismiss the UCC negligence claim. (Doc #: 12.) The common-law claims are (Continued on the next page)

---

[2] In addition to O.R.C. § 1304.03, Alotech has cited other UCC provisions it believes Huntington may have violated to supplement its UCC negligence claim. (See Opp. Br. at 14-18.) Whether any of those provisions actually apply to Huntington's conduct can be resolved following discovery.

8

dismissed with prejudice. The only claim against Huntington that survives its dispositive motion is the UCC negligence claim.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　 */s/ Dan A. Polster     January 24, 2014*
　　　　　　　　　　　　　　　　　　　　　　　**Dan Aaron Polster**
　　　　　　　　　　　　　　　　　　　　　　　**United States District Judge**